IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

VICKERY KIMBRELL,           )
                            )
    Plaintiff,              )
                            )   CIVIL ACTION NO.
v.                          )
                            )   CV-00-AR-1081-J
STATE FARM MUTUAL AUTOMOBILE)
INSURANCE COMPANY, et al.,  )
                            )
    Defendants.             )
                            )

FILED NOV -9 2000
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
NOV -9 2000

## MEMORANDUM OPINION

Before the court is the motion by defendant State Farm Mutual Automobile Insurance Company ("State Farm") for summary judgment. Plaintiff, Vickery Kimbrell ("Kimbrell"), alleges that State Farm and defendant LSI Financial Group, Inc. ("LSI") committed fraud and engaged in a conspiracy to defraud Kimbrell in connection with a settlement negotiated by State Farm on behalf of its insured, who was involved in an automobile accident with Kimbrell's stepdaughter. For the reasons set forth in the opinion below, State Farm's motion is due to be granted.

### PERTINENT AND UNDISPUTED FACTS, OR,

### DISPUTED FACTS CONSTRUED IN KIMBRELL'S FAVOR

On September 23, 1995, Kimbrell, while riding in his automobile driven by his stepdaughter Carla Waid ("Waid"), was



involved in an automobile accident with a vehicle driven by Georgia Ann Johnson ("Johnson"), who was insured under a policy written by State Farm. Kimbrell's vehicle suffered extensive damage.

On September 29, 1995, State Farm, through its claims handler Aaron Lang ("Lang"), determined that Kimbrell's vehicle was a total loss, and assessed its value at $12,625. The vehicle, however, had prior damage in the amount of $1,724.24. For this reason, State Farm reduced the value of the vehicle to $10,900.76, but later agreed to settle the property damage claim for $11,500. After accounting for $1,000 for owner-retained salvage (Kimbrell wanted to retain possession of the vehicle), State Farm agreed to pay $10,500 to LSI, the lienholder on Kimbrell's vehicle. After State Farm's payment, the balance due on Kimbrell's car note was $4,919.75. Upon full payment of his loan, Kimbrell would, of course, receive unencumbered title to the vehicle.

On January 25, 1996, LSI sent Kimbrell a letter concerning the outstanding balance on his car loan. Kimbrell does not recall receiving this letter, which specified that LSI had received payment from State Farm in the amount of $10,500, and that the balance on Kimbrell's loan was $4,919.75. Over the next few months, LSI sent Kimbrell several letters demanding payment of this balance.

Sometime in July 1996, Kimbrell called Lang to discuss why he

2

had not received title to the vehicle. Kimbrell and Lang discussed State Farm's payment to LSI of $10,500 in lieu of $12,500, the amount that Kimbrell claims he and State Farm previously agreed to. Lang told Kimbrell that Lopez, an agent for LSI, would look to Kimbrell and not to State Farm for the outstanding loan balance. After this conversation, Kimbrell had no reason not to understand why he had been receiving payment demand letters from LSI during the months preceding July 1996.

On July 22, 1996, Recovery Asset Group ("RAG"), a collection agency, wrote a letter to Kimbrell offering to settle the remaining balance of the car loan for $1,800. Kimbrell admits receiving this letter and having a conversation with Jay Gold ("Gold"), a collection agent at RAG. Kimbrell told Gold that he did not owe RAG any money, and that Gold needed to contact State Farm. Sometime after this conversation, Kimbrell called Lang to discuss State Farm's settlement arrangement with LSI. Lang unequivocally informed Kimbrell that LSI intended to collect the outstanding loan balance from Kimbrell. Subsequently, Kimbrell received collection notices and telephone calls from RAG, but he "ignored them, [and] told them [he] didn't owe it." Kimbrell Depo. at 89. Kimbrell filed his claim of fraud against State Farm in this case on April 14, 2000.

3

**SUMMARY JUDGMENT STANDARD**

Rule 56(c), F.R.Civ.P. provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has emphasized that this language means exactly what it says: there must be a **genuine** issue of **material** fact, not merely some factual dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986). What this standard means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S.Ct. at 2511 (citing First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575 (1968)).

On defendant's motion for summary judgment, the court must look at the evidence, construed in plaintiff's favor, to see if a jury could return a verdict for plaintiff. If so, defendant's motion for summary judgment must be denied. If, however, there is no legitimate basis upon which a jury could return a verdict for plaintiff, defendant's motion must be granted.

**DISCUSSION**

While State Farm denies that it committed fraud or engaged in

4

any conspiracy in connection with its financial settlement with Kimbrell, the first and dispositive issue is State Farm's statute of limitations defense.

State Farm contends that Kimbrell's fraud and conspiracy claims are barred by Alabama's two-year statute of limitations: "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years." Ala. Code. § 6-2-38(l) (1993); Howard v. Mutual Sav. Life Ins. Co., 608 So. 2d 379, 381 (Ala. 1992). Moreover, when the statute of limitations is raised as a defense, the Alabama Code provides that "the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." Ala. Code § 6-2-3 (1993). Courts consistently hold that a claim for fraud accrues at the time the plaintiff discovers the facts constituting fraud: "'Fraud is deemed to have been discovered when the person either actually discovered, or when the person ought to or should have discovered, facts which would provoke inquiry by a person of ordinary prudence, and, by simple investigation of the facts, the fraud would have been discovered.'" Tribble v. Provident Life and Acc. Ins. Co., 534 So. 2d 1096, 1099 (Ala. 1988) (quoting Gonzales v. U-J Chevrolet Co., Inc., 451 So. 2d 244, 247 (Ala. 1984)).

Therefore, it is the knowledge of facts which would put a reasonable person on notice of the possible existence of fraud which is sufficient to start the running of the statute of limitations. Hicks v. Globe Life and Acc. Ins. Co., 584 So. 2d 458 (Ala. 1991).

While the question of when a party discovered or should have discovered the fraud has long been a jury question, Thompson v. National Health Ins. Co., 549 So. 2d 12 (Ala. 1989), Vandegrift v. Lagrone, 477 So. 2d 292, 295 (Ala. 1985), where the facts regarding the discovery of the fraud are uncontroverted and reveal that the alleged fraud occurred more than two years before the commencement of the suit, summary judgment is proper. Gonzales, 451 So. 2d at 247; Hicks, 584 So. 2d at 463. Alabama courts hold that "fraud is discoverable as a matter of law for purposes of the statute of limitations when one receives documents that would put one on such notice that the fraud reasonably should be discovered." Hickox v. Stover, 551 So. 2d 259, 262 (Ala. 1989). See also Nichols v. North American Equitable Life Assurance Co., 502 So. 2d 375, 377 (Ala. 1987); Retail, Wholesale & Department Store Employees Union, Local 453 v. McGriff, 398 So 2d 249 (Ala. 1981). If, however, the documents are vague, or do not adequately provide notice that a fraud has occurred, then the statute of limitations defense should be submitted to the jury. Hickox, 551 So. 2d at 262.

In his earlier incarnation as a trial lawyer, this court learned that a person in Alabama claiming to have been defrauded must investigate and get to the courthouse with the claim within two years after the date upon which he, she or it should, by an exercise of reasonable diligence, have discovered the likelihood of fraud. In First Federal Savings & Loan Ass'n of Miami v. Mortgage Corp. of the South, 650 F.2d 1376 (5th Cir. 1981), the old Fifth Circuit, from which the Eleventh Circuit sprang like Eve from Adam's rib, not only confirmed this principle, but recognized the right of the trial judge, at the stage when the court is evaluating a fraud case under Rule 56, F.R.Civ.P., scrutiny, to sit in judgment on the undisputed facts that were available to the plaintiff in order to ascertain whether those facts should, as a matter of law, have put him, her or it upon sufficient inquiry to start the running of the two year statute of limitations. First Federal, the plaintiff in that case, was first represented by Honorable Robert S. Vance as its lawyer before he was appointed to the Fifth Circuit bench. The undersigned inherited that representation from Judge Vance when he left the law practice. At that time the undersigned shared lawyer Vance's belief that the question of when a person, by the exercise of reasonable diligence, should have known enough to start the running of the fraud statute of limitations is a matter for jury determination. Both lawyer

Vance and the undersigned were wrong. The undersigned now readily acknowledges that his and lawyer Vance's mutual client had enough information to have opened its eyes more than two years before it filed suit. The undersigned can be forgiven, after 19 years, for saying that the Fifth Circuit was entirely correct when it affirmed the trial judge after he had granted summary judgment upon a finding of the existence of sufficient facts within First Federal's knowledge to have put it upon notice of possible fraud, and to have required it promptly to conduct any investigation it deemed necessary before either filing suit or forever foregoing the right to file a suit.

After reciting the undisputed facts available to First Federal more than two years before it went to court, the Fifth Circuit said:

> This knowledge...should have prompted First Federal to make further inquiry.

650 F.2d at 1378.

In its concluding paragraph, the Fifth Circuit held:

> We agree with the district court's determination that, prior to December 22, 1973, First Federal possessed notice or knowledge that it had been defrauded and deceived which was sufficient to trigger the running of the two-year statute of limitations.

650 F.2d at 1379.

The lesson of <u>First Federal</u> is that there comes a time when things become so obvious that they cannot be ignored with impunity. Put another way, a fraud victim cannot turn a blind eye to glaring indicia of fraud and then ask forgiveness for not meeting the filing deadline.[1]

Here, Kimbrell filed his third party complaint on April 14, 2000. For his fraud claim to survive summary judgment, Kimbrell must have learned of facts that would have put a reasonable person on notice of the possible existence of fraud on or after April 14, 1998. It is undisputed, however, that Kimbrell knew as early as July 1996 that State Farm had tendered $10,500, rather than $12,500, to LSI in satisfaction of his car debt:

> Q: Okay. And then sometime . . . in the summer of 1996, you were able to track down Aaron Lang.
>
> A: Yes, I believe that is right.
>
> Q: And did you go back over what you thought the settlement was?
>
> A: What I thought the settlement was . . . he told me that they paid a check for ten thousand five hundred dollars to Mr. Lopez . . . and he said Mr. Lopez would get the rest out of me . . .
>
> Q: Now, what did you do after you talked to Mr. Lang there in the summer of '96 after

---

[1] Fifth Circuit precedent prior to the creation of the Eleventh Circuit is, of course, binding on the Eleventh Circuit. <u>Bonner v. Prichard</u>, 661 F.2d 1206 (11th Cir. 1981).

9

      he told you they paid ten thousand five hundred?

  A: I didn't do nothing.

  Q: But you were still getting calls and letters from different entities telling you that you owed money?

  A: Right.

  Q: Were you essentially ignoring them?

  A: I ignored them, told them I didn't owe it.

  Q: Did anyone tell you that you didn't owe it? In other words, did any one of those people agree with you and say okay, Mr. Kimbrell - -

  A: No.

  Q: They all said you owed the money?

  A: Right.

Kimbrell Depo. at 88-89.

Almost four years passed from the time Kimbrell had actual notice of the amount State Farm tendered until the filing of his complaint. Moreover, the information available to Kimbrell from LSI and RAG in July 1996 concerning the balance due on his loan provided clear and adequate notice of a possible controversy between the parties. Yet Kimbrell ignored these letters and telephone calls and admittedly "didn't do nothing" even though he knew that State Farm had paid $10,500 in satisfaction of his

10

outstanding debt. In light of this evidence, Kimbrell's fraud claim is barred by the two-year statute of limitations, and the court need not consider the merits of Kimbrell's fraud and conspiracy claims.

## KIMBRELL'S AFFIDAVIT

In an apparent attempt to create a question of fact, Kimbrell submitted an affidavit, dated October 23, 2000, that contradicts previous sworn testimony given by him on September 6, 2000. Kimbrell offered his affidavit "primarily to affirm all of my statements contained in my Opposition[, as well as] to emphasize several of the more important disputes I have with State Farm and LSI." In the past, this court has found little merit in such filings, and this instance is no exception. Lester v. Compass Bank, Civ. No. 96-AR-0812-S, 1997 WL 151782 (N.D. Ala 1997). "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously clear testimony." Van T. Junkins & Assocs., Inc. v. U.S. Industries, Inc., 736 F.2d 656, 657 (11th Cir. 1984). Kimbrell provides no valid explanation as to why the court should consider his affidavit which contradicts his prior deposition testimony. Since Kimbrell offers no "plausible explanation for the discrepancy," Id. at 659

11

(Johnson, J. dissenting), the court deems the affidavit a sham.

## CONCLUSION

A separate and appropriate order will be entered.

DONE this 9th day of November, 2000

William M. Acker
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE